## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **ECHO DCL, LLC,** | § | |
| | § | |
| **Cross-Claimant,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:18-cv-531-KPJ** |
| | § | |
| **INSIGHT INVESTMENTS, LLC,** | § | |
| | § | |
| **Cross-Defendant.**[1] | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Cross-Claimant ECHO DCL, LLC's ("Echo") Motion for Leave to Amend Crossclaim (the "Motion to Amend") (Dkt. 155), to which Cross-Defendant Insight Investments, LLC ("Insight") filed a response in opposition (Dkt. 157) and Echo filed a reply (Dkt. 158). Insight thereafter filed a sur-reply to the Motion to Amend. *See* Dkt. 159.

Also pending before the Court is Insight's Rule 12(b)(6) Motion to Dismiss Echo's Crossclaims against Insight (the "Motion to Dismiss") and Insight's Rule 11 Motion for Sanctions and Fees (the "Motion for Sanctions"). Insight filed both of these Motions in the same filing. *See* Dkt. 142. Echo filed a response in opposition (Dkt. 148), and Insight filed a reply (Dkt. 151).

Having considered the parties' briefing and the relevant law, the Court **grants** Echo's Motion to Amend (Dkt. 155). Echo shall have fourteen (14) days to file its amended crossclaim(s). Insight's Motion to Dismiss (Dkt. 142) and Motion for Sanctions (Dkt. 142) are both **denied**.

---

[1] The caption has been modified to reflect the remaining parties and claims in this matter.

1

# I.      BACKGROUND

## A.  General Background

United Excel Corporation ("United") was a prime contractor under a design build contract with the United States Government for modernization of, and repairs to, an existing medical clinic located at Vance Air Force Base ("Vance AFB") in Enid, Oklahoma (the "Government/United Contract"). *See* Dkt. 128 at 11. In relevant part, United's responsibilities under the prime contract included providing a transportable modular office building, also known as a temporary phasing facility (the "Modular" or "TPF"), to "house displaced clinic staff operations while the modernization and HVAC work proceeded on the existing clinic building." *Id.* United subsequently entered into a subcontract with Icon Construction, Inc. ("Icon") in September 2017 (the "United/Icon Contract"), under which Icon was to provide: (1) the Modular design and shell to the site; (2) the design and installation of necessary systems to the Modular; (3) warranty of the systems during the occupancy of the Modular; and (4) the dismantling of the Modular from the site upon completion of occupancy by the Government. *Id.*

In its performance under the United/Icon Contract, Icon leased the Modular from Insight in December 2017 (the "Icon/Insight Lease Agreement"). *See* Dkt. 1 at 2–3. Pursuant to the Icon/Insight Lease Agreement, Icon agreed to pay Insight monthly payments beginning January 1, 2018, in the amount of $19,000, for a period of twenty months. *Id.* at 2. At the same time, Icon and Insight executed an amendment to the lease agreement (the "Lease Agreement Amendment"), which provided that Icon would direct United to make lease payments directly to Insight. *Id.* at 3. In short, Icon leased the Modular from Insight and installed it at Vance AFB, with United allegedly responsible for making the monthly lease payments to Insight for a period of twenty months.

On July 26, 2018, Insight commenced this lawsuit against Icon and United after Insight allegedly failed to receive lease payments for the Modular. *See generally id.* In its five-count Original Complaint (Dkt. 1), Insight raised claims against Icon for breach of contract and judicial foreclosure, and claims against both Icon and United for unjust enrichment, trespass to chattels, and conversion. *Id.* United moved to dismiss Insight's Original Complaint for failure to state a claim and improper venue. *See* Dkt. 12. Icon responded to Insight's Original Complaint by filing an answer and asserting a counterclaim against Insight for "usury violations" under Texas or, alternatively, California law. *See* Dkt. 13. Insight subsequently moved to dismiss Icon's counterclaim. *See* Dkt. 27.

After filing this lawsuit, Insight filed an Application for Writ of Sequestration (the "Application") (Dkt. 4), wherein Insight asked the Court to enter a prejudgment writ of sequestration to sequester the Modular during the pendency of this lawsuit, or alternatively, to order Icon to return the Modular to Texas or require Icon and United to post a bond. *See* Dkt. 4 at 2. The Court set a hearing on the Application for February 5, 2019. *See* Dkt. 23.

On January 28, 2019, the parties filed their joint Rule 26(f) Report. *See* Dkt. 41. Therein, the parties informed the Court of a pending state court lawsuit Icon had filed against United in the 429th Judicial District, Collin County, Texas. *Id.* at 3–4. In the Rule 26(f) Report, the parties advised that the state case was abated "based upon the ADR provisions in the Subcontract [between United and Icon] requiring Icon to submit all claims against United to either (a.) the government contract claims procedures in the contract or (b.) for claims not subject to the government procedures to arbitration with United pursuant to American Arbitration Association procedure." *Id.* at 6.

On February 1, 2019, Icon filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Texas. *See* Dkt. 44. As a result, the Court vacated the upcoming Rule 16 Management Conference in this case as well as the hearing on the Application. *See* Docket Entry for February 4, 2019. The Court further ordered the parties to file a joint status report explaining their respective positions regarding the impact of Icon's bankruptcy petition on this case, and whether this case could proceed against United while Icon's bankruptcy petition remained unresolved. *See* Dkt. 45. On March 1, 2019, the parties indicated in their joint status report that the bankruptcy court was considering a motion filed by Icon seeking approval for assignment of its claims against United to Insight (the "Assignment Agreement"). *See* Dkt. 46; *see also id.* at 5 ("Icon has agreed to assign these claims to Insight because Icon lacks the resources to pursue these claims and, in the event Insight prevails on the assigned claim(s), Icon could receive a proceed of such funds without having to have expended estate resources pursuing those claims itself.").

The Assignment Agreement provided for assignment of the following claims from Icon to Insight:

> 2.  **Assignment of Arch claims.**  Icon hereby assigns to Insight all of Icon's legal and beneficial right, title, interest in and ownership of Icon's claims against Arch Insurance Company arising under that certain Payment Bond issued by Arch Insurance Company as surety for principal United Excel Corporation dated October 11, 2016, in the penal sum of $13,954,718, OMB Control Number: 9000-0045, Expiration Date: 7/31/2019, for contract date 9/30/2016, Contract Number W9127S-13-D-6002-0006, including but not limited to any claim under the Miller Act.

> 3.  **Assignment of UEC claims.**  Icon hereby assigns to Insight all of Icon's legal and beneficial right, title, interest in and ownership of Icon's claims against United Excel Corporation arising under that certain Contract for Labor and Materials Between United Excel Corporation and Icon Construction, Inc., Government Contract #W91 27S-1 3-D-6002-0006, UE Project No. UE16-0026, dated April 3, 2017, and all amendments, additions or other documents changing that Contract.

> 4.  **Assignment of NASIC claims**.  Icon hereby assigns to Insight all of Icon's legal and beneficial right, title, interest in and ownership of Icon's claims, if any, against surety North American Specialty Insurance Company ("NASIC"), under Bond No. 2170807 issued by NASIC, for NASIC's bad faith refusal, if any, to pay the claims of Insight against that bond. With respect

4

*See* Dkt. 46-2 (Assignment Agreement) at 2; Dkt. 57-2 (Bankruptcy Court Order). In exchange for the assignment, Insight agreed to distribute to Icon fifty percent of all proceeds collected in prosecution or settlement of the assigned claims, after deducting litigation costs and crediting amounts owed by Icon to Insight under the Lease Agreement:

> 9.  **Proceeds distributions.**  All proceeds or other things of value received by Insight or Insight's affiliates or others at Insight's direction or consent in connection with Insight's prosecution to judgment or settlement of each assigned claim, except for the assigned claim aginst NASIC which distribution, if any, shall proceed as set forth in Section 4, shall be distributed as follows, in the following order:
>
> > a.  Insight shall receive an amount equal to all of Insight's reasonable and necessary attorney's fees, court costs, expert witness fees, and expenses directly incurred and paid by Insight in the prosecution of such claim, but not for any of Insight's in-house attorney's fees or other in-house expenses.
> >
> > b.  Insight shall receive an amount equal to all the amounts owed by Icon to Insight pursuant to the Master Lease and Schedule No. 1, after credit for any amount in item a., immediately above, that would have been due under that Master Lease and Schedule No. 1.
> >
> > c.  Insight and Icon shall each receive 50% of the balance of the proceeds or value remaining after deducting the amounts in subsections a. and b., immediately above.

*See* Dkt. 46-2 at 3.[2] The Assignment Agreement also included the following clause:

> 11.  **Icon's counterclaims against Insight.**  Icon agrees to dismiss or otherwise not prosecute its counterclaims against Insight in Case 4:18-00531 in the United States District Court for the Eastern District of Texas – Sherman Division upon bankruptcy court approval of this Agreement.

*See* Dkt. 46-2 at 4.

Upon review of the parties' joint status report, the Court stayed this case pending the bankruptcy court's ruling on Icon's motion for assignment of its claims to Insight. *See* Dkt. 47. On April 2, 2019, the parties filed a supplemental joint status report indicating that the bankruptcy court granted Icon's motion for assignment subject to certain qualifications it intended to set forth in a written order. *See* Dkt. 48. The bankruptcy court's written order was issued on April 9, 2019. Therein, the bankruptcy court granted an assignment of the claims as set forth in the Assignment

---

[2] The Court cites to the internal pagination at the center bottom of 46-2 rather than CM/ECF pagination.

Agreement above. The bankruptcy court, however, ordered that Icon's assignment of claims to Insight was "subject to all defenses of [United,]" and that "nothing in the Assignment Agreement shall require Insight to defend claims brought by any party against [Icon]." *See* Dkt. 57-2 at 1–2. Based on the information provided by the parties regarding matters still pending in bankruptcy court, the Court continued the stay in this case. *See* Dkt. 52.

On March 1, 2019—before the bankruptcy court approved the Assignment Agreement—Icon filed a federal lawsuit against United and its surety, Arch Insurance Company, in the United States District Court for the Western District of Oklahoma for damages under the Miller Act (the "Oklahoma federal case"). *See United States for Use and Benefit of Icon Constr., Inc. v. United Excel Corp. et al.*, No. 5:19-cv-204 (W.D. Okla. Mar. 1, 2019). United moved to stay proceedings and compel arbitration in that case. On April 24, 2019, the Oklahoma federal court granted the motion, stayed the proceedings, and ordered the parties to arbitration pursuant to the arbitration provision contained in the United/Icon Contract. *See id*. On April 30, 2019, United initiated arbitration proceedings against Icon with the American Arbitration Association (the "AAA").

Thus, by this point, four separate proceedings involving the parties were pending in various courts: (1) this case; (2) the Oklahoma federal case, which was in arbitration with the AAA; (3) Icon's Chapter 11 bankruptcy proceeding; and (4) Icon's Texas state court case against United, which was abated for arbitration.

In September 2019, Icon's case against United in Texas state court was dismissed for want of prosecution. *See Icon Constr., Inc. v. United Excel Corp.*, No. 429-03177-2018 (429th Dist. Ct., September 17, 2019); *see also* Oklahoma federal case, Dkt. 11 at 5 (noting that Icon "previously initiated an arbitration proceeding in August of 2018 against [United] upon order of the state court, which was later closed without resolution.").

In October 2019, Insight moved to lift the stay in this case. *See* Dkt. 56. At that time, United filed a motion to compel Insight to arbitrate the claims raised in this case. *See* Dkt. 60. On February 25, 2020, the Court lifted the stay. *See* Dkt. 75. The Court, however, denied United's motion to compel arbitration, finding:

> In its Complaint, which was filed on July 26, 2018, prior to Icon's bankruptcy, Insight asserted claims against United for its use, enjoyment, and conversion of Insight's property—the TPF. Though Insight now owns Icon's claims pursuant to the Assignment Agreement, and *may* assert those claims, Insight insists that it is not seeking to assert Icon's claims in this suit. Further, Insight presents that it did not assume any of Icon's obligations, and thus, is not obligated to participate in the pending arbitration brought by United against Icon.
>
> . . .
>
> The Court thus finds that Insight only took assignment of Icon's potential legal claims against United rather than assuming the entirety of the contract with United, and thus, maintained the discretion of whether to assert those claims. *See* Dkt. 60-1 at 1, 3 ("Icon hereby assigns to Insight all of Icon's legal and beneficial right, title, interest in and ownership of Icon's claims against United Excel Corporation arising under that certain Contract. . . . As to each assigned claim, Insight agrees that in the event it elects, in its sole discretion, to [prosecute] any of the claims assigned to it from Icon by virtue of this Agreement, that Insight will do so diligently. . . ."). Accordingly, the Court cannot properly mandate Insight to participate in the arbitration between United and Icon, and Insight may assert its own claims against United.

*Id.* at 4–5; *see also* Dkt. 83 (April 15, 2020 Memorandum Adopting Report and Recommendation).

Upon lifting of the stay in this case, on April 29, 2020, Insight renewed its Application for a Writ of Sequestration (the "Renewed Application"). *See* Dkt. 86. For purposes of the Renewed Application, the parties stipulated that the Modular was, as of August 6, 2020, still being used by the United States Government at Vance AFB. *See* Dkt. 101. On August 28, 2020, the Court denied Insight's Renewed Application. *See* Dkt. 105.

Meanwhile, United filed a motion to dismiss in the Oklahoma federal case, which had been stayed since April 2019 for arbitration proceedings. *See* Oklahoma federal case, Dkt. 8. United

sought dismissal on grounds that Icon refused to participate in the AAA arbitration proceedings, which led the AAA to "discontinue[] further administration of the arbitration on May 12, 2020." *See* Oklahoma federal case, Dkt. 11 at 2. In response, Icon argued that since it assigned its Miller Act claims against United to Insight per the Assignment Agreement, it could not proceed with arbitration of those claims in light of the assignment. *Id.* Icon further indicated that after Insight declined to pursue those claims, Icon "*re-acquired* the Miller Act claims from Insight" and was now able to proceed with the arbitration. *Id.* at 2–3 (emphasis added). In September 2020, the court in the Oklahoma federal case ultimately denied United's motion to dismiss, and ordered the parties to re-submit their dispute to arbitration.[3]

As for this case, United moved to dismiss Insight's claims in March 2021. *See* Dkt. 112. In the briefing on the motion to dismiss, the Court learned that since Icon's initial assignment of its claims against United to Insight in 2019, there had been a reassignment of the claims from Insight back to Icon (the "Reassignment Agreement") in 2020. *Id.* at 10. United represented that

> . . .[O]n September 2, 2020, Insight and Icon entered into a Reassignment of Assigned Claims Agreement wherein Insight reassigned to Icon the claims Icon had previously assigned to Insight. Paragraph 2 of the Reassignment Agreement provided that Insight would receive 20% of any funds recovered by Icon in Icon's prosecution of the claims. Thus, Insight now has a contractual right to recover from any recovery made by Icon.

*See* Dkt. 114 at 2. United's briefing was also the first time the Court learned of another development—Icon's sale of its assets to Echo and Echo's subsequent arbitration demand against United:

> . . .[O]n February 27, 2020, Icon sold all of its assets to Echo DCL, LLC ("Echo") which included all claims of Icon against [United] and [United's] surety, Arch Insurance Company.

---

[3] To date, no further action has occurred in the Oklahoma federal case.

> . . .[O]n October 15, 2020, Icon (Echo as assignee) filed a demand for Arbitration with the American Arbitration Association against [United] and its surety. In the demand, Icon sought to recover rent for the temporary phase facility (the Modular) from [United].

*See id.* at 2–3.  In addition, United's briefing apprised the Court of a *second* federal case in Oklahoma, filed in August 2020, that had not been previously disclosed to the Court. *See id.* at 4. This second Oklahoma federal case was brought by Insight against Icon's surety company. *See Insight Invs. LLC v. North American Specialty Ins. Co.*, No. 5:20-cv-788 (W.D. Okla. Aug. 10, 2020). A review of the docket in that matter shows that on May 23, 2022, the court granted the surety company summary judgment on Insight's claims, finding that Insight was not a claimant on the payment bond Icon obtained from the surety company.[4] *See* 2022 WL 1630982.

On August 12, 2021, the present case was referred to the undersigned for all further proceedings and entry of judgment by consent of the parties. *See* Dkt. 126. Shortly thereafter, on August 16, 2021, the Court issued a Scheduling Order. *See* Dkt. 127. In relevant part, the Scheduling Order set August 20, 2021, as the deadline for United to file an answer and for the parties to join any additional parties. *Id.* In addition to filing an answer, United filed a counterclaim against Insight and a crossclaim against Icon and Echo. *See* Dkt. 128 at 10–13. United's counterclaim and crossclaim both sought declaratory judgment. *Id.* (stating that United "seeks

---

[4] The court found:

> Assessing the plain language of the Bond, and the totality of the Insight-Icon transaction, including the Master Lease Agreement, the Court finds that the Bond was not intended to encompass as a "supplier" a party who, after Icon finished building the TPF, purchased the TPF and leased it back to Icon. Insight provided Icon only money, not material: in exchange for up-front cash funding of $410,000, Icon agreed to give Insight an ownership interest in the completed TPF and, ultimately, to direct UEC's monthly payments to Insight. To hold that the Master Lease Agreement qualified Insight as a supplier would be to allow Icon to unilaterally expand the potential liability of NASIC on the Bond, essentially making NASIC the guarantor of Insight's provision of funding to Icon. Structuring Icon's repayment obligation as a lease does not convert Insight into a material supplier— Insight was simply an investor. There is no basis in the language of the Bond that it was intended to cover a monetary investment.

*See* 2022 WL 1630982, at *8 (footnote omitted).

judgment declaring the rights of [United], Plaintiff Insight, Defendant ICON and Defendant Echo regarding the claim for rent arising out of modular or TPFs which were provided to a project located on Vance Air Force Base.").

In September 2021, Insight and Icon filed a joint stipulation of dismissal, which prompted the Court to enter an order dismissing all claims and counterclaims between Icon and Insight. *See* Dkts. 136, 138. Similarly, in January 2022, Insight and United filed a joint stipulation of dismissal, which resulted in the dismissal of all claims and counterclaims between Insight and United. *See* Dkts. 144, 145. Due to the dismissal, United's motion to dismiss was denied as moot. *See* Dkt. 145.

As for United's crossclaim against Echo for declaratory judgment relief, Echo was served on November 4, 2021. *See* Dkt. 139. On December 10, 2021, Echo filed an answer. *See* Dkt. 140. At the same time, Echo filed crossclaims against Insight and United. *See* Dkt. 141. A few months later, on January 12, 2022, United and Echo stipulated to the dismissal of all claims between them without prejudice. *See* Dkts. 147, 149. The dismissal left Echo's crossclaims against Insight as the only pending claims remaining in this Court.

### B.  Echo's Crossclaims against Insight

Echo has asserted two crossclaims against Insight: (1) breach of contract, and (2) declaratory judgment. *See* Dkt. 141. These crossclaims stem from the Reassignment Agreement. Echo alleges the following with respect to the terms of the Reassignment Agreement:

> 12. On February 26, 2019, in conjunction with the bankruptcy proceedings, Icon sold its claims against [United] and Icon's surety claims, to Insight. Insight did not diligently pursue those claims.
>
> 13. On February 27, 2020, also in conjunction with the bankruptcy, Icon likewise sold all of its assets to ECHO, which assets included all claims. To give effect to the transfer, Insight reassigned its [United] claims back to Icon on September 2, 2020, retaining a 20% interest in the net recovery.

14. The reassignment stated in relevant part:

RECITALS

WHEREAS, on or about February 26, 2019, the Parties entered into an Assignment Agreement whereby pursuant to paragraphs 2 and 3 thereof, Icon assigned the following claims to Insight:

2. Assignment of Arch claims. Icon hereby assigns to Insight all of Icon's legal and beneficial right, title, interest in and ownership of Icon's claims against Arch Insurance Company arising under that certain Payment Bond issued by Arch Insurance Company as surety for principal United Excel Corporation dated October 11,[ ]2016, in the penal sum of $13,954,718, OMB Control Number: 9000-0045, Expiration Date: 7/31/2019, for contract date 9/30/2016, Contract Number W9127S-13-D-6002-0006, including but not limited to any claim under the Miller Act.

3. Assignment of [United] claims. Icon hereby assigns to Insight all of Icon's legal and beneficial right, title, interest in and ownership of Icon's claims against United Excel Corporation arising under that certain Contract for Labor and Materials Between United Excel Corporation and Icon Construction, Inc., Government Contract #W91 278-1 3-D-6002-0006, UE Project No. UE16-0026, dated April 3, 2017, and all amendments, additions or other documents changing that Contract.

WHEREAS, the Assignment Agreement was approved by the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division on or about April 9, 2019;

NOW THEREFORE, in consideration of the mutual covenants hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency or which are mutually acknowledged, the Parties hereto agree as follows:

AGREEMENT

1. Reassignment. Insight hereby reassigns to Icon the above cited claims (the "Reassigned Claims") so that Icon may prosecute its Miller Act claims, including as plead in CIV-19-204-F, *United States of America for the use and benefit of Jeon Construction, Inc. v. United Excel Corporation and Arch Insurance Company,* currently on file in the United States District Court for the Western District of Oklahoma.

2. Payment of Recovered Funds to Insight. 20% of any actually recovered funds by Icon in its prosecution of the Reassigned Claims, after deducting costs and attorneys' fees, will be paid to Insight within thirty (30) days of recovery by Icon.

3. Assumption of Duty/Burden/Detriment. Icon expressly and knowingly assumes any duty, burden or detriment associated with the Reassigned Claims.

*Id.* at 3–4.

Echo alleges that, subsequent to its purchase of Icon's assets, it initiated arbitration proceedings against United in October 2020. *See id.* at 5. Echo further asserts that "[d]espite reassigning its claims against [United] to Echo through Icon, Insight continue[d] to pursue this litigation [in this Court]." *Id.* Echo contends that Insight's actions have created "confusion and the risk of inconsistent judgments between this Court and the arbitrator, without legal standing or capacity to do so as Insight no longer has a financial consequence outside of its 20% interest in Echo's recovery." *Id.* Finally, Echo claims that Insight pursued this lawsuit as a "'lost use' quantum meruit claim, which is nothing more than a restatement of the lease rights already in arbitration, and which was clearly reassigned to Icon and therefore to Echo." *Id.*

Echo's breach of contract claim against Insight alleges that Insight breached the Reassignment Agreement by continuing to pursue this litigation. *Id.* For purposes of its declaratory judgment claim, Echo seeks a declaration of rights that:

1) it is the rightful owner of all claims arising out of or relating to the [United] subcontract with Icon, including the TPF lease agreement; 2) Insight is not entitled to pursue any claims in contract or equity owing to the Reassignment of claims back to Icon and therefore Echo; 3) Echo is the sole party with authority to pursue any claims against [United] and/or Arch Insurance Company; and 4) [United] has waived its arbitration agreement it the subcontract by crossclaiming against Echo DCL, LLC as to Echo's substantive right of recovery. Echo DCL, LLC seeks its attorneys' fees and costs incurred in prosecution of this matter.

*Id.* at 6.

As noted earlier, Echo filed its crossclaims against Insight on December 10, 2021. *See* Dkt. 141. On December 29, 2021, Insight filed the Motion to Dismiss and Motion for Sanctions that are presently before the Court. *See* Dkt. 142. These Motions are fully briefed. *See* Dkts. 148, 151.

On January 24, 2021, Echo filed the Motion to Amend, which is presently before the Court. *See* Dkt. 155. The Motion to Amend is also fully briefed. *See* Dkts. 157–59.

## II.   ANALYSIS

### A.  Insight's Motion to Dismiss

Insight moves to dismiss Echo's crossclaims against it under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. 142 at 1. Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Because dismissals under Rule 12(b)(6) are disfavored, the Court must accept all well-pleaded facts in the plaintiff's complaint as true, "even if doubtful or suspect," and view them in the light most favorable to the plaintiff. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

A claim will survive an attack under Rule 12(b)(6) if, considering all well-pleaded facts, the complaint states a plausible claim for relief, rather than "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The well-pleaded facts must allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* When considering a motion to dismiss for failure to state a claim, the Court's review is limited to the complaint, any document attached to the complaint, and any document attached to the motion to dismiss that is central to the claim and referenced by the complaint. *See Lone Star Fund V (U.S.),*

*L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

Upon review of the crossclaims, the Court finds that Echo has stated claims for relief under Rule 12(b)(6). Insight argues in its Motion that the plain language of the Assignment Agreement, the Reassignment Agreement, and the Court's prior order, issued April 2020, establish that "Insight's claim [against United] [was] independent of any contract claim of Icon that could have been assigned" to Echo. *See* Dkt. 142 at 5. Similar to past arguments raised in this lawsuit, Insight continues to maintain that the only claims it has pursued in this lawsuit against United were its own unjust enrichment claims. *Id.* at 4. The problem with Insight's argument is, for purposes of Rule 12(b)(6), the Court must accept as true the allegations pled by Echo in its crossclaims. Looking to these allegations, Echo has stated a claim for relief as to breach of the Reassignment Agreement. Because the Reassignment Agreement was executed after the Court ruled on the nature of Insight's claims against United, the Court's earlier rulings do not bear on Echo's crossclaims stemming from the Reassignment Agreement. Although Insight contends the Reassignment Agreement, by its plain language, covers only Icon's claims—which are now assigned to Echo—and none of Insight's *own* claims against United, Echo's crossclaims assert otherwise. *See* Dkt. 141 at 6 (Echo alleging "it is the rightful owner of all claims arising out of or relating to the [United] subcontract with Icon, including the TPF lease agreement"; "Insight is not entitled to pursue any claims in contract or equity owing to the Reassignment of claims back to Icon and therefore Echo"; and "Echo is the sole party with authority to pursue any claims against [United] and/or Arch Insurance Company"). Under the confines of Rule 12(b)(6), the Court will deny Insight's Motion to Dismiss (Dkt. 142).

### B.  Insight's Motion for Sanctions

Insight's Motion for Sanctions (Dkt. 142) under Rule 11 of the Federal Rules of Civil Procedure seeks sanctions in the amount of $4,000 against Echo. *See* Dkt. 142 at 5–6. Counsel for Insight maintains that Echo's crossclaims are "frivolous bad faith" claims that Echo insisted on bringing despite Insight's alleged efforts to inform Echo's counsel of the supposed issues with the claims. *Id.*

Rule 11 provides, in relevant part:

(b) **Representations to the Court.** By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; . . .

FED. R. CIV. P. 11(b)(1–3). Rule 11 "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (internal quotation marks omitted).

As explained by the Supreme Court, "Rule 11 is aimed at curbing abuses of the judicial system." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 542 (1991) (internal quotation marks omitted). In the Fifth Circuit, when determining whether a party has violated Rule 11, "the standard under which an attorney is measured is an objective, not subjective,

standard of reasonableness under the circumstances." *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 581 (5th Cir. 2008). "The reasonableness of the conduct involved is to be viewed at the time counsel. . . signed the document alleged to be the basis for the Rule 11 violation." *Jennings v. Joshua Indep. Sch. Dist.*, 948 F.2d 194, 197 (5th Cir. 1991). "The Court is not charged with determining which party's position is correct, but rather, is charged with determining whether a motion crosses the threshold of frivolousness such that no reasonable litigant could believe it would succeed." *Dynamic Applet Techs., LLC v. Mattress Firm, Inc.*, No. 4:17-cv-860, 2019 WL 1370858, at *4 (E.D. Tex. Mar. 26, 2019).

There is nothing before the Court justifying sanctions under Rule 11. Echo's crossclaims do not "cross[ ] the threshold of frivolousness." *Id.* at *4. Echo's pursuit of crossclaims against Insight does not suggest bad faith or an improper purpose on the part of Echo. Further, nothing in the email correspondence submitted by the parties can reasonably be construed as abusive. Objectively viewed, Echo's crossclaims plead factual allegations corresponding to the elements of its various cross claims. Thus, the Court finds that sanctions against Echo are not warranted. Insight's Motion for Sanctions (Dkt. 142) is therefore denied.

## C.  Echo's Motion to Amend

In its Motion to Amend, Echo seeks leave to add additional crossclaims against Insight for conversion, tortious interference, money had and received, and unjust enrichment. *See* Dkt. 155 at 11–14. Echo seeks leave to amend based on information that Echo received after filing its initial set of crossclaims against Insight. *Id.* at 2. On January 18, 2022, Echo was first apprised of the terms of United's settlement agreement with Insight. *Id.* On the same day, Echo learned that United intended to seek a setoff in its arbitration proceeding with Echo for the amount United paid to Insight under the United/Insight settlement agreement. *Id.* Echo has submitted the United/Insight

settlement agreement for *in camera* review. *See* Dkt. 156. In its briefing, Echo represents that the settlement amount "involves a substantial amount of money paid" by United to Insight, "against the rights of Echo DCL, the only legitimate owner of any claims against [United]." *See* Dkt. 155 at 2.

In addition to moving to dismiss Echo's crossclaims, Insight opposes Echo's Motion to Amend. *See* Dkt. 157. Insight's opposition boils down to three arguments: first, the Motion to Amend is "too late [because] it's based on facts and claims known to Echo since its first involvement in this case"; second, the Motion to Amend is prejudicial to Insight because written discovery has already been completed; and third, the issues raised by Echo in its crossclaims have already been rejected by the Court, thereby making it futile to allow Echo leave to amend. *See id.* at 1–2.

Insight's first two arguments are unpersuasive. As Echo points out in its briefing, Echo was only brought into this lawsuit in November 2021, nearly three years after the case was first filed. As soon as Echo entered the lawsuit, it filed its crossclaims against Insight. One month later, the party that brought Echo into this case initially—United—exited this lawsuit by virtue of the stipulation of dismissals it entered into with Insight (Dkt. 144), Echo (Dkt. 147), and Icon (Dkt. 150). Given this sequence of events, it is difficult to conceive how Echo could have acted with more diligence in asserting its crossclaims against Insight. Relatedly, the timing of Echo's entry into this lawsuit undercuts Insight's argument that it will be unduly prejudiced by the amendment due to written discovery having been completed. The Scheduling Order in this case set the non-expert discovery deadline for October 30, 2021, and expert discovery deadline for November 23, 2021. *See* Dkt. 127. Echo was not served until November 4, 2021, and did not file its answer and crossclaims until after both discovery deadlines had passed. Given this timing, Echo should not be

precluded from amending its crossclaims simply because Insight previously undertook discovery in connection with the now-dismissed claims between Insight and United. Furthermore, Echo has indicated that additional discovery is not needed and its crossclaims are ripe for summary judgment motion practice. *See* Dkt. 158 at 3–4 ("No discovery is needed. The damages are liquidated, which is the sum of the confidential settlement . . . . All of the relevant documents are already before this Court[.] . . . There is nothing left to discover."). Thus, there is no undue prejudice to Insight.

Nor is there any merit to Insight's argument that the amendment would be futile. Echo's crossclaims stem from the Reassignment Agreement, an agreement that was entered into in September 2020, but which was not disclosed to the Court until March 2021 when United—not Insight—brought it to the Court's attention. The Court's prior rulings, to date, have never analyzed the Reassignment Agreement. Insight's futility argument is based on Court rulings that predate the execution of the Reassignment Agreement; therefore, based on where the case stands right now, the Court does not find that Echo's crossclaims are futile or otherwise lack merit.

The Court will therefore grant Echo's motion to amend under Rules 15 and 16 of the Federal Rules of Civil Procedure. "When a trial court imposes a scheduling order, Federal Rules of Civil Procedure 15 and 16 operate together to govern the amendment of pleadings." *Tex. Indigenous Council v. Simpkins*, 544 F. App'x 418, 420 (5th Cir. 2013). Rule 15(a) governs a party's request to amend its pleading before a scheduling order's deadline to amend passes. *See id.* Rule 16(b)(4) governs a party's request to amend its pleading after the deadline to amend passes. *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 F. App'x 866, 868 (5th Cir. 2010) (citing *S&W Enters., LLC v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003)).

Rule 15(a) provides that a party may amend its pleading once without seeking leave of court or the consent of the adverse party at any time before a responsive pleading is served. After

a responsive pleading is served, "a party may amend only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a). Rule 15(a) instructs the court to "freely give leave when justice so requires." *Id.* The rule "'evinces a bias in favor of granting leave to amend.'" *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)). But leave to amend "is not automatic." *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704, 718 (S.D. Tex. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). Whether to grant leave to amend "lies within the sound discretion of the district court." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845–46 (5th Cir. 1992). A district court reviewing a motion to amend pleadings under Rule 15(a) considers five factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of amendment. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Rule 16(b)(4) provides that the Court's scheduling order may be modified only for good cause and with the judge's consent. *See Agredano v. State Farm Lloyds*, No. 5:15-cv-1067, 2017 WL 5203046, at *1 (W.D. Tex. July 26, 2017) (citing *E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 333–34 (5th Cir. 2012)) (stating, "a party seeking leave to amend its pleadings after a deadline has passed must demonstrate good cause for needing an extension."). "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S&W Enters., LLC*, 315 F.3d at 535 (quoting 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1522.1 (2d ed. 1990)). In determining whether good cause exists, courts consider a four-part test: "(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3)

potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice." *Id.* (quoting *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997)). Only after the movant demonstrates cause under Rule 16(b)(4) does "the more liberal standard of Rule 15(a)" apply to a party's request for leave to amend. *Id.*

In short, the Court finds that Echo has demonstrated good cause under Rule 16(b)(4) to modify the August 16, 2021 Scheduling Order. As stated above, Echo was not a party to this lawsuit at the time the Scheduling Order was entered. After entering the lawsuit, Echo immediately filed its crossclaims against Insight, and later sought leave to amend as soon as Echo became aware of Insight's settlement with United and United's intention to seek a setoff for the settlement amount in the ongoing Echo-United arbitration proceeding. Based on these circumstances, the Court finds that Echo has satisfied Rule 16(b)(4). Turning to the requirements of Rule 15(a), there is no evidence of bad faith or dilatory motive on the part of Echo. Nor is there any undue delay by Echo and no resulting prejudice to Insight. Further, this is Echo's first motion to amend. Finally, at this juncture, the amendment is not futile. Therefore, the Court grants Echo's Motion to Amend (Dkt. 155). Echo shall have fourteen (14) days to file its amended crossclaim(s).

### III.   CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Insight's Motion to Dismiss (Dkt. 142) is **DENIED**.

2. Insight's Motion for Sanctions (Dkt. 142) is **DENIED**.

3. Echo's Motion to Amend (Dkt. 155) is **GRANTED**. Echo shall have fourteen (14) days from entry of this Memorandum Opinion and Order to file its amended crossclaims.

So ORDERED and SIGNED this 26th day of September, 2022.

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE