IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ECHO DCL, LLC | § | |
| | § | |
| v. | § | NO. 4:18-CV-00531-BD |
| | § | |
| INSIGHT INVESTMENTS, LLC | § | |

**MEMORANDUM OPINION AND ORDER**

In this convoluted case, third-party defendant Echo DCL, LLC, pleaded claims against Insight Investments, LLC, the original plaintiff. Dkts. 141 (original pleading); 163 (amended pleading). Jurisdiction has still not been established, so the court calls for more information yet again.

**BACKGROUND**

The court has already described the facts of the dispute in detail. *See* Dkt. 161. What matters at this stage is the procedural history. The case began when Insight sued Icon Construction, Inc., and United Excel Corp. Dkt. 1. Both of those defendants filed counterclaims against Insight. Dkts. 13, 128. United also filed crossclaims against Icon and third-party claims against Echo. Dkt. 128. Echo filed counterclaims against United and claims against Insight. Dkt. 141.

Insight and Icon settled their disputes. Dkts. 136, 138. So did Insight and United. Dkts. 144, 145. United and Echo voluntarily dismissed their claims and crossclaims and went to arbitration. Dkts. 147, 149. United and Icon followed suit. Dkts. 150, 153. At that point, the only remaining claims were Echo's claims against Insight. Echo amended those claims with leave of court. Dkts. 161 (order), 163 (amended pleading).

After the original claims were resolved, the court questioned its jurisdiction over Echo's claims against Insight and ordered briefing on the issue. Dkts. 185, 191; Minute Entry for July 1, 2025; *see* Dkts. 186 (Echo's second amended pleading), 189 (third amended pleading), 192 (fourth amended pleading). That additional briefing still does not establish the court's jurisdiction over the claims against Insight.

## DISCUSSION

### I. The Procedural Mechanism for Echo's Claims

Federal Rule of Civil Procedure 13 allows a party to plead counterclaims against an opposing party, Fed. R. Civ. P. 13(a)–(e), or crossclaims against a coparty, *id.* R. 13(g). Rule 14(a)(1) allows a defending party to become a third-party plaintiff by pleading claims against a nonparty, who then becomes a third-party defendant, *id.* R. 14(a)(2). The third-party defendant may then assert counterclaims against the third-party plaintiff and crossclaims against any other third-party defendant. *Id.* R. 14(a)(2)(B). The third-party defendant "may also assert against the plaintiff any claim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff." *Id.* R. 14(a)(2)(D).

Although Echo refers to its claims against Insight as crossclaims, *see* Dkt. 163, they are neither crossclaims nor counterclaims. Echo is a third-party defendant, and Insight, the original plaintiff, has not pleaded any claims against it. Echo's claims are therefore authorized, if at all, by Rule 14(a)(2)(D), not Rule 13, and are properly described as "claims." *See Lamoon, Inc. v. Lamour Nail Prods., Inc.*, 373 F. App'x 795, 796 n.1 (9th Cir. 2010); 6 Wright & Miller's Federal Practice & Procedure § 1407 (3d ed. 2025 update) (noting that "claims asserted by third-party defendants against the original plaintiff, as provided for in Rule 14(a)(2)(D), often are mistakenly labeled as counterclaims or crossclaims, although technically they are neither").

### II. Echo's Failure to Invoke the Court's Jurisdiction

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

As the party attempting to invoke the court's jurisdiction, Echo bears the burden of establishing it. *Id.* Echo has consistently asserted that 28 U.S.C. § 1332 gives this court jurisdiction over its claims against Insight because it and Insight are citizens of different States. Dkts. 141 at 2, 163 at 2,

2

186 at 1, 189 at 1, 192 at 2. It has never argued that 28 U.S.C. § 1367 allows the court to exercise supplemental jurisdiction or that any other statutory provision confers jurisdiction.

Section 1332 establishes federal courts' jurisdiction over actions between "citizens of different States" "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." That provision requires "complete diversity." *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019). In other words, "all persons on one side of the controversy [must] be citizens of different states than all persons on the other side." *Id.* "Because federal courts have limited jurisdiction, parties must make 'clear, distinct, and precise affirmative jurisdictional allegations' in their pleadings." *Id.* (quoting *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988)).

Echo argues that its citizenship at the time it filed its amended pleading, rather than when it first filed its claims against Insight, is what matters for purposes of the jurisdictional inquiry required here. Echo is wrong about that, and it has not established its citizenship at the relevant time. The court will give it yet another chance to do so.

### A. Insight's citizenship

Insight is a limited-liability company ("LLC"). Dkt. 192 at 3. An LLC's citizenship is that of each of its members. *Megalomedia Inc. v. Phila. Indem. Ins. Co.*, 115 F.4th 657, 659 (5th Cir. 2024). At the time Echo filed its claims, Insight had just one member, Insight Investments, Corp. Dkt. 192 at 3. A corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). At the relevant time, Insight Investments, Corp., was incorporated in California and had its principal place of business there, so it was a California citizen. Dkt. 192 at 3. That means that Insight Investments, LLC, was also a California citizen.

### B. Echo's citizenship

Echo's citizenship at the relevant time is more difficult to discern. Echo first filed its claims against Insight in December 2021. Dkt. 141. It amended those claims in October 2022. Dkt. 163. Its citizenship appears to have changed in the interim. *See* Dkts. 186, 192.

3

Echo asserts that, at the time of its amended pleading in 2022, it was a single-member LLC. Dkt. 192 at 2. Its only member was Mike Ames, who was at the time a Texas citizen. *Id.* Echo argues that its citizenship at that time is what matters for diversity jurisdiction. *Id.*

More than twenty years ago, the Supreme Court considered the effect of a mid-litigation change in a party's citizenship for purposes of § 1332. *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567 (2004). The Court noted that "[i]t has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought'" and called that time-of-filing rule "hornbook law." *Id.* at 570 (2004) (quoting *Mollan v. Torrance*, 22 U.S. 537, 539 (1824)).

Echo argues that *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), changed that rule. In *Royal Canin*, the Supreme Court considered the effect of the plaintiff's amended complaint after removal to federal court based on 28 U.S.C. § 1331, which grants federal courts jurisdiction over cases "arising under" federal law. *Id.* at 25–26. Specifically, the Court considered whether a "federal court [can] still adjudicate the now purely state-law suit" that results when, "after removal, the plaintiff amends her complaint to delete all the federal-law claims, leaving nothing but state-law claims behind." *Id.* at 25. The Court held that it may not. *Id.*

Echo points to language in *Royal Canin* that emphasizes the plaintiff's control over her case:

> If a plaintiff amends her complaint, the new pleading "supersedes" the old one: The "original pleading no longer performs any function in the case." Or as we put the matter over a century ago: "When a petition is amended," the "cause proceeds on the amended petition." So changes in parties, or changes in claims, effectively remake the suit. And that includes its jurisdictional basis: The reconfiguration accomplished by an amendment may bring the suit either newly within or newly outside a federal court's jurisdiction.

*Id.* at 35–36 (citations omitted). In Echo's view, that language did away with the time-of-filing rule for determining a party's citizenship. But *Royal Canin* cites *Grupo Dataflux* favorably and gives no indication of overturning it. *Id.* at 38 n.8. Instead, *Royal Canin* contrasts the time-of-filing rule with its holding that a post-removal amendment to pleadings can divest the court of jurisdiction. *Id.* According to *Royal Canin*, the time-of-filing rule "assesses a factual issue relevant to jurisdiction

4

only at the suit's outset" but does not "limit the effect of the plaintiff's decision, as the master of her complaint, to add or subtract claims or parties." *Id.*

Echo does not acknowledge *Royal Canin*'s discussion of the time-of-filing rule, and this court will not read *Royal Canin* as overturning that century-old precedent. *See Mollan*, 22 U.S. at 539 (explaining that the court's diversity jurisdiction "depends upon the state of things at the time of the action brought, and that after vesting, it cannot be ousted by subsequent events"). *Royal Canin*'s holding would allow Echo to alter the jurisdictional landscape by adding or subtracting claims or parties, but that is not what happened here. What changed between Echo's first and its amended pleading was its own citizenship. According to *Grupo Dataflux*, 541 U.S. at 570–71, as confirmed in *Royal Canin*, 604 U.S. at 38 n.8, a party's citizenship must be assessed as of the time the action was brought.

That means the existence (or nonexistence) of diversity jurisdiction depends on Echo's citizenship in December 2021, when it filed its claims against Insight. Dkt. 141. According to Echo, its members from its founding in 2020 until October 2022 were Sasha Bell, Conrad Keller, Mike Ames, and Skyward Forge, L.P., a limited partnership. Dkts. 186 at 2, 189 at 2. Bell, Keller, and Ames were all Texas citizens in December 2021. Dkt. 189 at 2–3. Skyward Forge, L.P., had one general partner, Skyward Forge GP, LLC, whose members were Michael Jarrard and Chris Jarrard. *Id.* at 2. Michael and Chris Jarrard were both Texas citizens. *Id.*

But Echo does not sufficiently identify Skyward Forge, L.P.'s citizenship at the relevant time. *See* Dkts. 186, 189, 192. By definition, a Texas limited partnership must have "one or more limited partners." Tex. Bus. Orgs. Code § 1.002(50). And the citizenship of the partnership is determined by the citizenships of all its partners. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008). Echo states that "Skyward Forge, LP's limited partner has been since its formation on July 24, 2019, a Texas limited partnership, Chris Jarrard." Dkt. 192 at 5. It is unclear from that statement whether Skyward Forge, L.P.'s limited partner is (a) another, as-yet unnamed, Texas limited partnership or (b) Chris Jarrard, an

5

individual. Without clear, affirmative allegations of each party's citizenship, the court remains unable to confirm its jurisdiction. *See Getty Oil*, 841 F.2d at 1259.

## CONCLUSION

It is **ORDERED** that, within seven days of the entry of this order, Echo file a supplemental brief that clearly states the identity and citizenship of each partner of Skyward Forge, L.P., as of the date Echo first filed its claims against Insight. If dismissal for lack of subject-matter jurisdiction is acceptable to Echo, no further supplemental brief need be filed.

So **ORDERED** and **SIGNED** this 29th day of September, 2025.

_____
Bill Davis
United States Magistrate Judge